# White *v.* Farley *et al.*

*Bill in Equity for Redemption of Lands sold at Mortgage and Execution Sales.*

1. *Levy antedating issuance of writ; mere irregularity.*—An indorsement of a levy on an execution, antedating the issue of the writ, is a mere irregularity, which does not render the sale void, though it might be good cause for setting it aside on timely application to the court.

2. *Failure to give personal notice of levy.*—The failure of the sheriff to give personal notice of the levy to the defendant in execution, is a mere irregularity, and does not render the sale void.

3. *Sheriff's sales and the statute of frauds*—Sheriff's sales under execution are within the statute of frauds; but the sheriff is regarded as the agent of both the purchaser and the defendant in execution; and when his indorsements on the writ and the recitals in his deed, state all the facts neces-ary to constitute a sufficient memorandum (Code, § 2122), the purchaser has a perfect equitable title to the lands, which is as good in a court of equity as a legal title in a court of law, although the sheriff's deed may be defective for want of a proper acknowledgment.

4. *Parol trust in land sold at sheriff's sale; when void.*—When the purchaser of lands at sheriff's sale under execution pays his own money, taking the title to himself, a verbal agreement or promise by him to purchase and hold for the benefit of the defendant in execution, is void (Code, §2199), and will not be enforced.

5. *Insanity; burden of proof and what sufficient to avoid contract.*—Sanity being the normal condition of the human mind, the *onus* of proving mental incapacity sufficient to avoid a contract, is on the party who asserts it; and it is not sufficient to show mere weakness of intellect, not seriously impairing the reasoning faculties or the memory, nor indicating inability to understand the common business affairs of life.

6. *Same; no defense to actions ex delicto.*—An action of trover being *ex delicto*, mental incapacity on the part of the defendant, or insanity even, is no defense; and the mental *status* of the defendant at the time of the rendition of the judgment, or at the sale under execution, does not affect the validity of the sale.

7. *Sale of land under execution; adequacy of price affected by incumbrances.*—When mortgaged lands are sold under execution against the mortgagor, and he afterwards seeks to set aside the sale on account of the inadequacy of the price, the validity and value of the incumbrance must be taken into the estimate.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

[White v. Farley *et al.*]

The bill in this case was filed July 28, 1882, by the appellant, Joseph S. White, against John G. Farley, and E. R. McCall, both as executor of the will of Joseph Beasley and guardian of Sarah Beasley, daughter of said Joseph Beasley, and others not necessary to mention, and sought to redeem certain lands, originally belonging to appellant, which had been sold at execution sale, Oct. 6, 1873, and at mortgage sale, Dec. 13, 1873. The said Joseph Beasley became the purchaser at both these sales.

The execution under which the lands were sold, was issued on a judgment rendered against appellant in an action of *trover.* It was dated July 21, 1873, and the date of the levy on said lands endorsed thereon, was September 27, 1872. The lands were sold under this execution by L. J. Bryan, sheriff of Lowndes county, and bought by Beasley for $291.73. The levy on the lands as the property of appellant, with a description of them, and the date of the levy as above stated, and also, the fact of sale for said amount to Beasley, were endorsed on the execution and signed by the sheriff. Beasley paid the purchase-money, and the sheriff executed to him a deed of said lands in regular form, the certificate of acknowledgment of which, was as follows:

"State of Alabama, ) I, J. V. McDuffie, Judge of Probate Lowndes county. ) of said county, that L. J. Bryan, the grantor to the foregoing conveyance, known to me, appeared before me this day, and being sworn, stated he voluntarily executed the same on the day the same bears date. Given under my hand, this 7th day of October, A. D., 1873. J. V. McDuffie, P. J. L. C."

On February 9, 1883, a second acknowledgment of said deed was made by said Bryan after his term of office had expired, and a certificate thereof in the form prescribed by the statute was attached to said deed. The record is silent as to whether or not the sheriff gave the appellant personal notice of the levy on the lands as required by § 3195, Code of 1876 ; appellant testified that the notice was not given. The mortgage under which the lands were subsequently sold, was executed January 13, 1873, by appellant and his wife, to John G. Farley and William L. Ernest, partners under the name of Farley & Co. It was for the sum of $3,296.96, which it recites was an antecedent indebtedness, secured in whole or in part by six several mortgages on said lands, executed by appellant alone, and bearing date at different times from May 20, 1870, the date of the first, to April 27, 1872, the date of the last. At the mortgage sale the lands were bought by said Beasley for $3,200, and having

paid the purchase-money, he received a deed therefor under said sale.

The bill alleges that from "the year 1869 to 1874, both inclusive, the appellant was wholly incapacitated to transact ordinary business in consequence of his mental and physical condition." The testimony on this point, which is voluminous on both sides, tended to show that appellant was not naturally of a strong mind, and that during this period he was addicted to the excessive use of morphine, and was weak-minded, a poor manager and an unreliable business man.

The bill also alleged, in substance, that Beasley bought the lands on account of appellant. There was evidence tending to establish an agreement or understanding between Beasley and appellant to that effect, and there was evidence to the contrary. All the evidence, however, showed that if such agreement was made, it was oral and not reduced to writing.

The appellant alleged irregularities in the mortgage sale, which are not passed on by this court, for the reason stated in the opinion.

W. C. GRIFFIN, and GIRARD COOK, for appellant.

W. R. HOUGHTON, contra.

SOMERVILLE, J.—The bill was filed in July, 1882, for the purpose of redeeming certain lands which had been sold at mortgage sale on the 13th day of December, 1873, and also at an execution sale made by the sheriff on October 6th, 1873. As the sheriff's sale was, in our opinion, sufficient to cut off and bar the complainant's right of redemption, which must under the statute have been exercised within two years from the date of sale, we deem it unnecessary to consider the alleged irregularities which are claimed to vitiate the mortgage sale.

1. It is objected, in the first place, that while the execution under which the sheriff made the sale bears date in July, 1873, the levy upon the lands is endorsed as having been made in September, 1872, which is an impossible date, and that this makes the sale void. This conclusion is incorrect. The defect suggested is, at most, a mere irregularity, which might render the sale voidable, on motion to set it aside, urged in a court of law with seasonable diligence; but it did not render the sale void.—*Samples v. Walker*; 9 Ala. 726; *Steele v. Tutwiler*, 68 Ala. 107.

2. The same is true as to the alleged failure of the

sheriff to give personal notice of the levy to the defendant in execution, who is the complainant in the present bill, as required of him by § 3195 of the Code (1876). It can stand upon no higher ground than a failure of the sheriff to advertise the sale of lands levied on, and this, as often held, is a mere irregularity not vitiating the validity of the sale. A judgment against the owner, an execution thereon, a levy and a sheriff's deed is all that is requisite.—*Ware v. Bradford*, 2 Ala. 676 ; *Ray v. Womble*, 56 Ala. 32. The precise point was so decided in *Love v. Powell*, 5 Ala. 58, more than forty years ago, and may now be regarded as a rule of property not to be unsettled.

3.  Whether the deed made by Bryan, as sheriff, to Beasley, the acknowledgment of which was defective in form, could be again acknowledged by him in due form after the expiration of his term of office, so as to be operative by relation from the date of its first delivery, we need not decide. *Livingston v. Kettelle*, 41 Amer. Dec. 166, 173 ; *Jackson v. Ramsey*, 15 Amer. Dec. 242, 246. It is enough to say that Beasley, by his purchase at the sheriff's sale, acquired a perfect equity to the lands, and his title in a court of chancery is as good as a legal title would be in a court of law. Sheriff's sales, it is true, made under execution, are held to be within the statute of frauds. But the sheriff is deemed the agent of both the purchaser and of the defendant in execution, and as such he may make a memorandum of the particulars or terms of the sale such as may be necessary to satisfy the requirement of the statute of frauds.—*Robinson v. Garth*, 6 Ala. 204. Though not properly auctioneers, nevertheless sheriffs, being accredited by law, stand in the attitude of auctioneers, who are empowered, as agents for both the seller and the purchaser, to make the requisite written memorandum.—Browne on Stat. Frauds, § 369 ; Code, 1876, § 2122. In this case, the terms of sale are sufficiently designated both by the endorsements of the sheriff on the execution returned by him into court, and by the deed executed by him to Beasley, which was imperfectly acknowledged.—*Jenkins v. Harrison*, 66 Ala. 345 ; Browne on Stat. Fraud, § 351 ; *Nickel v. Ridley*, 5 Yerg. (Tenn.) 63. The case of *Stewart v. Stokes*, 33 Ala. 494, is an authority for the proposition that, upon the death of the sheriff or other vacation of his office, under this state of facts, a bill for specific performance would lie in favor of the purchaser against the defendant in execution to compel a conveyance by him, it being shown that the purchase-money had been paid. The power of the sheriff to convey in such cases is not deemed a mere naked power, but "a power coupled

with a trust." It may be added that section 3207 of the Code, authorizing sheriffs in certain cases to make conveyance of lands sold by their predecessors, so that the conveyance shall relate back to the date of sale, has no especial bearing in this case.—*McCall v. White*, 73 Ala. 562.

The bill being filed more than eight years after the date of the sheriff's sale, comes too late—as much so as if the purchaser had acquired a good legal title by suitable acknowledgment of the deed taken in due form.

4. The alleged agreement of Beasley to buy the lands in controversy on account of the complainant, White, is not satisfactorily proved by the testimony. Moreover, if it were, the agreement was merely oral, and void as in conflict with section 2199 of the Code (1876), which provides that "no trust concerning lands except such as results by implication, or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating, or declaring the same, or his agent, or attorney, lawfully authorized thereto in writing." "A mere parol promise," as said in *Patton v. Beecher*, 62 Ala. 579, " by the grantee that he will hold for the use and reconvey to the grantor on request, is a trust which must be created or declared in writing." The facts here raise no resulting trust, the lands having been paid for by Beasley with his own, and not with White's money.—*Rose v. Gibson*, 71 Ala. 35. Nor was the title acquired by contrivance, deceit, or false representation, in such manner as to raise a trust *ex maleficio*, which has been held to be tacitly excepted from the provisions of this section by the statute of frauds.—*Patton v. Beecher, supra;* Pomeroy on Contr. § 144; *Lamborn v. Watson*, 14 Amer. Dec. 275, *note* 278; Browne Stat. Frauds, § 94.

5. The testimony appearing in the record shows at most mere weakness of intellect on the part of White, and not unsoundness, disease, or derangement of mind, such as would disqualify him from entering into contracts of the kind he is shown to have made with Farley & Co. The *onus* of proving himself to have been *non compos* was cast on the complainant, sanity being presumptively the normal condition of the human mind. It does not appear that his memory or reasoning faculties were seriously impaired, or that he was afflicted with any inability to understand the common business affairs of life, or to comprehend the nature of a contract of mortgage, or the probable consequences flowing from its execution.—*Rawdon v. Rawdon*, 28 Ala. 565; *Stubbs v. Houston*, 33 Ala. 555; *In re Carmichael*, 36 Ala. 514; Bishop on Contr. § 289; *Pidcock v. Potter*, 8 Amer. Rep. 181. The

[Edwards, Admr'x, *et al.* v. Rogers.]

several mortgages executed by complainant to Farley & Co., and especially the one executed in January, 1873, were valid incumbrances on the land, so far at least as not to be affected by any want of capacity to contract on the part of the grantor. They are proper subjects of consideration, therefore, in determining the question as to the alleged inadequacy of price paid for the lands at the sheriff's sale.

6. In view of these incumbrances on the land, it is manifest that the price bid for the equity of redemption at the sheriff's sale—$291.73—was not so grossly inadequate as to justify a court of equity in setting aside the sale, even if the bill had been filed in time. We need add nothing to what has been said on this subject in *Gordon v. Twerdy*, 71 Ala. 202, and *Roy v. Womble*, 56 Ala. 32, where this phase of the case will be found to be fully discussed.

7. The judgment under which the sheriff's sale was made, we may add, was founded on trover, which is an action *ex delicto* and not *ex contractu*. To such an action insanity, even if proved, was no defense, and a sale of the land made under execution on such judgment can not be vitiated by the mental status of the defendant in execution either at the time of the judgment or of the sale.—Cooley on Torts, 99-103.

The other assignments of error are not well taken.

The decree of the chancellor dismissing the bill is affirmed.

CLOPTON, J., not sitting.