(113 So. 238)

## HALL v. BRITTON et al. (6 Div. 592.)

Supreme Court of Alabama. May 26, 1927.

1. **Homestead** ⬿118(4)**—Insanity of wife who joins with husband in alienation of homestead renders conveyance absolutely void (Code 1923, §§ 6822, 6823).**

Where wife is insane, conveyance of homestead by husband and wife is void; the con-

veyance not being within protection given to bona fide purchasers of land from insane persons under Code 1923, §§ 6822, 6823.

2. Deeds ⊙═68(1½)—Mortgages ⊙═76—Test of mental capacity of grantor or mortgagor is whether he had capacity to understand in a reasonable manner nature and effect of act.

In determining whether grantor or mortgagor had sufficient mental capacity, the question is, not merely whether his mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act.

3. Evidence ⊙═67(2)—Mortgages ⊙═86(1)— Party alleging incapacity of grantor or mortgagor has burden of showing incapacity at time conveyance was executed, and prior insanity will raise no presumption, unless shown to be permanent.

A party attacking a conveyance on the ground of incapacity of grantor or mortgagor has the burden of showing incapacity at time conveyance was made, and insanity prior to that raises no presumption thereof, unless such insanity is shown to be permanent in its nature.

4. Mortgages ⊙═86(3)—Evidence held not to require trial court to find that mortgagor lacked mental capacity when mortgage was executed.

In action for injunction against interfering with possession of property and to cancel mortgage and foreclosure thereunder, evidence *held* not to require the trial court to find that mortgagor was lacking in mental capacity at the time of the execution of the mortgage.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill by Mary Hall, by her next friend, Leila Brooks, against Jim Britton and others to cancel a mortgage and for an injunction. From a decree denying relief and dismissing the bill, complainant appeals. Affirmed.

Horace C. Wilkinson, of Birmingham, for appellant.

Counsel argues for error in the decree, but without citing authorities.

Hugh A. Locke, of Birmingham, and C. L. Odell, of Bessemer, for appellees.

The burden was on complainant to establish lack of mental capacity at the time of executing the mortgage. Washam v. Beaty, 210 Ala. 635, 99 So. 163; Harris v. Bowles, 208 Ala. 545, 94 So. 757; Stanfill v. Johnson, 159 Ala. 546, 49 So. 223. Where the testimony is taken orally before the court, the appellate court will not disturb the decree rested thereon unless it is plainly erroneous. McClurkin v. McClurkin, 206 Ala. 513, 90. So. 917; May v. State, 215 Ala. 16, 108 So. 863.

SOMERVILLE, J. The bill of complaint is filed by Mary Hall, the surviving wife of Jim

Hall, deceased, to cancel a mortgage executed by them jointly on September 5, 1915, to F. R. Matthews, conveying the homestead of Jim Hall to secure a debt of $240.84. It appears that this mortgage was foreclosed under the power of sale on October 17th. Thereafter, on November 30, 1922, the mortgagee conveyed the property by warranty deed to the respondent, Jim Britton. It appears also that Matthews, for the use of Jim Britton, has recovered judgment in ejectment against the complainant, under which a writ of possession has been issued, and is in the hands of the sheriff for execution. The bill prays for a writ of injunction, both temporary and permanent, against F. R. Matthews, Jim Britton, and T. J. Shirley, as sheriff, enjoining them from interfering with complainant's possession of the property; and that the mortgage and the foreclosure thereunder be canceled and avoided on the ground that complainant was non compos mentis when she executed the mortgage, as alleged in the bill.

[1] It is the settled law in this state that the insanity of the wife who joins with her husband in the alienation of the homestead renders the conveyance entirely void; such a conveyance not being within the protection given to bona fide purchasers of land from insane persons under sections 6822 and 6823 of the Code. Beaty v. Washam, 205 Ala. 92, 87 So. 337; Washam v. Beaty, 210 Ala. 635, 99 So. 163; Thompson v. N. E. Mort. Sec. Co., 110 Ala. 400, 18 So. 315, 55 Am. St. Rep. 29.

The only issue presented, therefore, is a question of fact—the mental capacity, vel non, of the complainant to join in the execution of the mortgage conveying her husband's homestead.

A great number of witnesses were examined orally in the presence of the court on this issue of fact. In a general way the testimony covered a period of about 30 years antedating the time of the trial, and established the fact, beyond any reasonable controversy, we think, that at times, once before and once after September 5, 1915, complainant had been violently insane, and was lacking in that degree of mental sanity and intelligence requisite for contractual capacity. It appears, however, with reasonable certainty that, during the period covered, she was not constantly insane, but had many periods of normality. The witnesses are in general agreement that complainant suffered two spells of violent insanity—one prior to 1900 and the other about 1920, or a little later. The evidence is not clear as to her mental condition during the intervening period. Complainant's witnesses almost uniformly agree that "her mind would come and go"; that "she has been franzy off and on occasionally"; and that "sometimes she is at herself and talks all right." One witness stated that she lost her mind some-

thing over 30 years ago, and "has been absent from her mind ever since." Another stated that the reason she said she is crazy minded is "she just talks, don't talk, you know, straight, but talks backwards and forwards" —a vice (or an accomplishment) by no means limited to the insane or feeble-minded.

Dr. Kinnett stated that he had known complainant since 1906, and had seen her quite often during that time on professional visits to her or her family; and he testified:

"I couldn't say that she had an impaired intellect. She is just what is known as 'not much sense.' She is just not intelligent. She hasn't much mentality."

The respondents offered testimony tending to show that complainant was mentally normal, and not insane, at the time she executed the mortgage.

[2] In order to render a deed void because of the mental incapacity of the grantor—and the principle is the same for any other signatory—the test is "not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing." 18 Corp. Jur. 218, § 131; White v. Farley, 81 Ala. 563, 8 So. 215; Stanfill v. Johnson, 159 Ala. 546, 49 So. 223.

[3] And "the burden of proof is upon the party attacking a conveyance to show the incapacity of the grantor at the time it is made, and insanity prior to that time does not raise the presumption of insanity at a subsequent time, unless it is shown that the insanity is permanent in its nature. * . * * Therefore, proof of insanity at intervals or of a temporary character would create no presumption that it continued up to the execution of the instrument, and the burden would be upon the attacking party to show insanity at the very time of the transaction." Pritchard v. Fowler, 171 Ala. 662, 55 So. 147; Johnson v. Armstrong, 97 Ala. 731, 736, 12 So. 72.

[4] Having in mind the advantage possessed by the trial court in estimating the intelligence and credibility of the several witnesses and the value of their testimony, we cannot say that the application of the above-stated principles of law to the evidence required the trial court to find that complainant was contractually non compos mentis when she executed the mortgage on September 5, 1915; and we must therefore affirm the decree denying relief and dismissing the bill of complaint.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.