THOMPSON, Presiding Judge.
 

 Howard Wells (“Howard”) appeals from the judgment of the Etowah Circuit Court in favor of his brother, Roger Wells (“Roger”), the administrator of the estate of Sarah Frances Wells (“the estate”); Sarah Frances Wells (“the mother”) was the parties’ mother. This is the second time this case has been before this court. With minor exceptions, the facts pertinent to this appeal are set forth in this court’s prior opinion,
 
 Wells v. Wells,
 
 49 So.3d 216, 217 (Ala.Civ.App.2010).
 
 [1]
 

 In the prior appeal, this court considered whether the evidence supported the trial court’s final judgment in favor of Roger, as administrator of the estate, that set aside a September 2007 deed transferring property containing the mother’s house to Howard on the basis of the trial court’s finding that the mother had suffered from a chronic mental incapacity and that, because of her diagnosis of chronic dementia, she had been incapable of experiencing a lucid moment at the time she signed the September 2007 deed. This court reversed that judgment. Although we concluded that there was sufficient evidence to support the trial court’s finding that the mother suffered from a chronic mental incapacity, we concluded that the evidence did not support the trial court’s finding that she was incapable of experiencing a
 
 *194
 
 lucid interval solely because she had been diagnosed with dementia. We remanded the case to the trial court to consider all the evidence that had been presented to it and to determine, based on that evidence, whether the mother had experienced a lucid interval at the time she signed the September 2007 deed.
 
 Wells,
 
 supra.
 

 Following remand, the trial court entered a new judgment in which it concluded that the evidence did not support a finding that the mother had experienced a lucid interval at the time she executed the September 2007 deed. In its judgment, the trial court wrote, in pertinent part:
 

 “This cause has been remanded to the trial court for further findings. Pursuant to the instructions of the Alabama Court of Civil Appeals, the trial court has considered the remaining evidence of record in order to determine whether or not the evidence supports a finding that [the mother], at the time she executed the September 2007 deed, was experiencing a lucid interval such that she was competent to execute the September 2007 deed. The Court determines that the evidence does not support such a finding.
 

 “First, a lucid interval will not be assumed in the face of the finding of substantial evidence of permanent incompetence. The burden was upon [Howard] to prove [that the mother] was lucid at the time she executed the September 2007 deed.
 
 Ex parte Chris Langley Timber & Mgmt., Inc.,
 
 923 So.2d 1100, 1105 (Ala.2005).
 

 “The only testimony presented by Howard ... directly related to this issue was the testimony of legal secretary Linda Gattis. Gattis had a one time meeting with [the mother] in a hospital room on the occasion of execution of the deed (the attorney who prepared the deed also testified, but never had a meeting with the [mother], only with [Howard]).
 

 “The testimony [on behalf of the estate] on the subject came from Roger (the administrator of his mother’s estate) and wife Sherry Wells, who spent a substantial amount of time with the [mother] and knew her both before and after her hospitalization and assisted living placement became necessary in August of 2007 ([the mother] died on October 6, 2007).
 

 “Unlike Linda Gattis’s one time encounter with the [mother], Sherry Wells testified that it had been her and Roger’s habit to speak with [the mother] every night on the phone and visit with her every weekend. They also bought her groceries, paid- her bills, and took her to the doctor.
 

 “After the hospitalization in August of 2007, Sherry testified [that the mother] was unremittingly confused and unable to handle her affairs until her death in early October.
 

 “Sherry testified that once [the mother] was placed in the hospital and then assisted living following her August 2007 episode, she and Roger would come up almost every evening and found [the mother] persistently mentally confused about her personal and business affairs on every occasion.
 

 “Based on this extensive, almost daily contact with [the mother] from August 2007 to her death in October 2007, Sherry concluded [that the mother] was not in her right mind to make decisions or handle her affairs.
 

 “Roger ... confirmed his wife’s experience and observations, concluding [that the mother] was unable to handle her business, and would not be able to appreciate the legal import and implication of her signature on any document such as a deed. While Roger said, based on
 
 *195
 
 his extensive time with his mother between August 2007 and October 2007, that he would not say she was under undue influence, he definitely could say [that the mother] did not know what she was doing.
 

 “In conclusion, Linda Gattis, Sherry Wells, and Roger ... were the pertinent witnesses regarding [the mother’s] lucidity in the face of her diagnosed permanent dementia between August 2007 and her death. The opinion of someone that briefly met the deceased one time in her life in a hospital setting simply cannot be compared to the deference to be accorded two caregivers and their lifetime of experience with [the mother], particularly having maintained close contact with the [mother] between August 2007 and October 2007.
 

 [[Image here]]
 

 “The ore tenus testimony of Sherry and Roger Wells is found to be credible. With the [mother] lacking sufficient mental capacity with no lucid intervals present at the time she executed this deed, this subject deed is, if necessary, due to the reversal and remand, once again set aside and held for naught.”
 

 Howard filed a timely appeal from that judgment to this court, which transferred the appeal to the supreme court for lack of appellate jurisdiction. The supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The standard by which this court is required to review the trial court’s judgment in this case is well settled. Because the trial court’s decision is based on ore tenus evidence, we will presume that its factual findings are correct, and we will not set them aside unless they are plainly and palpably wrong or unjust.
 
 See Tyler v. Tyler,
 
 990 So.2d 423, 428 (Ala.Civ.App. 2008). We do not extend this presumption of correctness to the trial court’s application of the law to the facts, however.
 
 See Hinds v. Hinds,
 
 887 So.2d 267, 271 (Ala. Civ.App.2003). Instead, we review a trial court’s application of the law to the facts de novo.
 
 See Town of Cedar Bluff v. Citizens Caring for Children,
 
 904 So.2d 1253, 1255-56 (Ala.2004).
 

 Howard contends that the trial court erred when it concluded that the mother was not experiencing a lucid interval at the time she executed the September 2007 deed. He argues that Roger did not introduce any evidence concerning the capacity of the mother at the time she executed the deed or even during the weeks before her execution of the deed. He argues, in effect, that the medical evidence that was presented at trial did not indicate that the mother was not experiencing a lucid interval at the time she executed the deed. Howard points out that five witnesses testified at the hearing that it had been the mother’s intent to convey her property to him, and he points out that both Gary Burns, the attorney who prepared the deed, and Linda Gattis, Burns’s legal secretary, testified that the mother was competent when she executed the deed. He points to Gattis’s testimony that she met with the mother, explained the deed to her, and was fully satisfied that the mother was competent to execute the deed. He argues that Gattis’s testimony was the only evidence of what occurred at the exact time the mother signed the deed and that the trial court should not have given any weight to the testimony of Roger and his wife, Sherry Wells (“Sherry”), because they were not present at the time the mother executed the deed.
 

 As previously stated, when this case was first on appeal, this court determined that evidence of record sustained the trial court’s conclusion that the mother had suffered from mental incompetence that was permanent in nature. As a result of that finding, the burden shifted to Howard to demonstrate, by clear and convincing evi
 
 *196
 
 dence, that, despite the mother’s permanent incompetence, she was experiencing a lucid interval at the time she executed the September 2007 deed,
 
 see Ex parte Chris Langley Timber & Mgmt., Inc.,
 
 923 So.2d 1100, 1105 (Ala.2005);
 
 Abbott v. Rogers,
 
 680 So.2d 315, 317 (Ala.Civ.App.1996), and that her execution of the deed “proceeded from [her] unaided volition.”
 
 Willis v. James,
 
 284 Ala. 673, 678, 227 So.2d 573, 578 (1969).
 

 Our review of the evidence presented to the trial court leads us to conclude that the trial court had before it sufficient evidence to determine, as it did, that the mother did not experience a lucid interval at the time she executed the September 2007 deed. Roger’s and Sherry’s testimony indicated that they spent a substantial amount of time with the mother, that they spoke with her by telephone every night, and that they visited with her almost every weekend. Their testimony further indicated that they provided a substantial amount of care to the mother, including shopping for her groceries, paying her bills, preparing her food, and handling her business affairs. Sherry testified that Roger and she would visit the mother almost every night after they left work, apparently during the period in question. Both Sherry and Roger testified to the mother’s problems with her memory, which were manifested by her repeating herself and by her asking the same questions multiple times. They testified that the mother was unable to handle her business affairs. Sherry testified that the mother would not have known what she was signing when she executed the deed conveying the property to Howard, and Roger testified that, in signing the deed conveying the property to Howard, the mother had not known what she was doing. Roger further testified that the mother would have signed anything that was placed in front of her.
 

 Although Burns testified that the mother was competent to execute the deed, the trial court properly could have rejected his testimony on this issue on the basis that Burns spoke with the mother on only a single occasion and never met her in person.
 
 [2]
 
 The trial court could have determined that Burns simply did not know the mother well enough to know whether, on the one occasion he spoke with her on the telephone, the mother truly “ ‘ “ ‘had sufficient capacity to understand in a reasonable manner the nature and effect’ ” ’ ” of executing the September 2007 deed.
 
 Ex parte Chris Langley Timber & Mgmt., Inc.,
 
 923 So.2d at 1105 (quoting
 
 Wilson v. Wehunt,
 
 631 So.2d 991, 996 (Ala.1994), quoting in turn other cases). Furthermore, the trial court was free to consider any bias Burns may have had in testifying to the validity of the deed, given that he was the attorney who prepared it.
 

 We recognize, as Howard argues, that Gattis was the only witness to testify as to what happened when the mother signed the September 2007 deed and that she testified that, at that time, the mother was competent to execute the deed. However, the trial court, in its role as fact-finder, was able to evaluate Gattis’s demeanor and credibility, and it was free to reject her testimony as being not credible.
 
 See Smith v. Smith,
 
 887 So.2d 257, 262 (Ala. Civ.App.2003), in which this court wrote:
 

 “ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credi
 
 *197
 
 bility of witnesses.” ’
 
 Ex parte Anonymous,
 
 803 So.2d 542, 546 (Ala.2001) (quoting
 
 Hall v. Mazzone,
 
 486 So.2d 408, 410 (Ala.1986)). Thus, the mother’s contention that the ore tenus rule does not apply to this case because she presented the only testimony and, therefore, the facts are undisputed, is incorrect. The trial court heard both the mother’s testimony on direct examination and on cross-examination, and it had the opportunity to evaluate the mother’s demean- or and credibility.”
 

 The trial court was free to give less weight to Gattis’s testimony because it could have concluded that she had never met the mother or spoken with her previously and, as a result, did not have a relationship with the mother that would have truly allowed her to know whether the mother actually understood what she was executing. The trial court also could have considered the potential bias of Gattis in testifying that the mother appeared to have the capacity to execute the September 2007 deed, given that, to have testified otherwise, Gattis would have been admitting that she knowingly allowed the mother to execute the deed despite the mother’s inability to understand what she was doing. The trial court likewise could have concluded that Gattis’s testimony was exaggerated, given the testimony of Roger and Sherry as to the mother’s inability to conduct her business affairs, and as to her confusion and memory problems, and Roger’s testimony that the mother was in such a state that she would sign any document placed in front of her.
 

 We also note that the testimony of the three individuals who indicated that the mother had, for years, told them that she intended to leave her house to Howard is evidence of her competency to execute the September 2007 deed.
 
 See McKinney v. Weatherford,
 
 242 Ala. 493, 496, 7 So.2d 259, 262 (1942). However, that testimony did not require the trial court, as the trier of fact, to conclude that the mother had experienced a lucid interval at the time she executed the September 2007 deed any more than in
 
 Wells
 
 it required the trial court to conclude that the mother had not suffered from an incompetency that was permanent in nature. It simply does not follow that, because the mother previously had expressed a desire to leave her house to Howard, her permanent incompetence had subsided and she was lucid at the time the September 2007 deed, procured largely as a result of Howard’s efforts, was presented to her for execution.
 

 Based on the foregoing, we conclude that Howard has failed to demonstrate a basis for finding error in the trial court’s judgment. As a result, that judgment is due to be affirmed.
 

 AFFIRMED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . In
 
 Wells,
 
 we stated that the mother was hospitalized from the summer of 2007 until her death in October 2007. Although the record was unclear in that case, it appears that that was a misstatement and that she was in and out of the hospital during that period.
 

 [2]
 

 . In his reply brief, Howard states that Burns testified that he spoke with the mother several times. Our review of Burns’s testimony reveals that he stated that he telephoned the mother only once, and his testimony does not indicate that the mother ever called him. Furthermore, he testified that he believed that the mother was competent based on "the conversation” he had had with her.